393 A.2d 364

**COMMONWEALTH of Pennsylvania**

v.

**Richard ROOTS a/k/a Eugene Walker, Appellant.**

**No. 216.**

Supreme Court of Pennsylvania.

Submitted April 17, 1978.

Decided Oct. 5, 1978.

Ronald Schulman, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Gaile McLaughlin, Barthold, Asst. Dist. Attys., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant was arrested on a Sunday afternoon when he was found alone in the basement of a pawnshop by two Philadelphia police officers responding to a radio call. Hinges on the door to the basement had been broken and eleven bicycles had been moved approximately sixty feet from an opposite wall to a point nearer the door. No burglary tools were found and no vehicle was seen in the vicinity. Following a jury trial, appellant was convicted of burglary and sentenced to eight to twenty years imprisonment. The conviction was affirmed by the Superior Court, without an opinion, and this Court granted review.

Defense trial counsel sought to have the court disallow the introduction of a prior conviction for aggravated robbery. Counsel argued that the five-year-old prior conviction was relatively remote, that appellant had no other available means of defense, and that his credibility could be impeached by less prejudicial means, in the form of allegedly inculpatory statements made to the owner of the premises in question. The application was denied and as a result, appellant did not testify in his own behalf at trial.

The single question to be considered in this appeal is whether the trial court abused its discretion in refusing the application. The right of an accused to testify as a witness in his own behalf is a fundamental tenet of American jurisprudence. It is equally established that witnesses may be impeached by an opposing party. The introduction before the trier of fact of a prior conviction of the witness has long been recognized as an approved method of challenging credibility. Finally, all of our legal principles must conform to our evolving concept of fairness. These precepts are beyond dispute and do not require the citation of authority. The difficulty arises when we are called upon to accommo-

date the sometimes competing interests sought to be accomplished by these various principles.

It would be naive to conclude that a lay finder of fact is capable of eradicating the prejudice which results from the knowledge of a witness's prior criminal record.[1] Even the most conscientious and dedicated juror's objectivity will be, at least unconsciously, colored by such knowledge. Furthermore, there is serious question as to the true probative value of a prior conviction on the veracity of a witness. It has also been suggested that the rule is based more on tradition than tested behavioral analysis.[2] These concerns are magnified where the question is whether the accused who seeks to testify on his own behalf may properly have his credibility attacked because of a prior conviction. Knowledge that his past convictions will be revealed to the jury, if he testifies, may well foreclose his only opportunity to present his version of the occurrence. In any event the serious potential of this evidence for unfairly influencing the jury on the issue of guilt is inescapable.

In *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), this Court endeavored to fashion a rule whereby these competing interests could be accommodated in a manner which was fair to both the accused and the prosecution. In *Bighum*, after rejecting the argument that the Due Process Clause of the Fourteenth Amendment was not offended because a defendant may elect not to testify in his own behalf because of his wish to keep from the jury

1. The inefficacy of cautionary instructions to mitigate the prejudicial impact of such evidence is generally recognized. *Commonwealth v. Bighum*, 452 Pa. 554, 566, 307 A.2d 255 (1973); *Commonwealth v. McIntyre*, 417 Pa. 415, 420, 208 A.2d 257 (1965). Judge Learned Hand, referring to cautionary instructions charging jurors to consider evidence for one purpose and not another, noted that such a charge requires a "mental gymnastic" beyond anyone's power. *Nash v. United States*, 54 F.2d 1006, 1007 (2nd Cir. 1932), *cert. denied*, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932). *See also* Krauser, "The Use of Prior Convictions as Credibility Evidence: A Proposal for Penna.," 46 Temple Law Quarterly 291 (1973).

2. *See e. g.* Lawson, "Credibility and Character: A Different Look at an Interminable Problem," 50 Notre Dame Lawyer 758, 789 (1975).

knowledge of his prior criminal record, we then focused upon the question of when it is appropriate to admit such testimony.

"While admittedly the state has a legitimate interest to serve in showing that a defendant-witness is not worthy of belief, we cannot be unmindful of the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged. We attempt to avoid this prejudice first by allowing the defendant the election not to testify without adverse comment, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973), and, in the event that he chooses to testify and such evidence is introduced, by making a cautionary instruction available to the defendant. I Wharton Criminal Evidence § 264 (13th Ed. 1972). However, we recognize that even with such safeguards, the possibility of unfairness in a given case may still be present   .   .   ."

*Id.*, 452 Pa. at 566, 307 A.2d at 262.

Since the only legitimate purpose for the introduction of such testimony is to cast doubt upon the defendant-witness's veracity we held that the prior conviction must be for a crime that reflects upon the perpetrator's veracity. In so doing we rejected the simplistic view that one who possessed the mens rea to commit a felony was necessarily an unreliable witness:

"Since the avowed purpose of using prior convictions in rebuttal is to cast doubt upon the defendant's veracity generally as a witness, it is important to limit the convictions so used to crimes involving dishonesty or false statement."

*Commonwealth v. Bighum, supra*, 452 Pa. at 566, 307 A.2d at 262.

Under the *Bighum* test, having once determined that the prior offense is one involving dishonesty, we are called upon to consider other factors before determining whether the evidence should be admitted in a given case for impeachment purposes.

".  .  . the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. This last factor is of critical importance. Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or, where the prior conviction is not critically important to the Commonwealth's case—e. g., where other adequate means of attacking the defendant's credibility are available—exclusion of prior convictions is strongly indicated." (citations omitted)

*Id.*, 452 Pa. at 567, 307 A.2d at 263.

Thus the *Bighum* rule represented a significant change in the former practice as to the admission of prior convictions for impeachment purposes. First, it restricted the offenses which could be used for impeachment to crimes involving dishonesty or false statement. Equally as important, *Bighum* rejected a per se rule of admissibility even where the prior crime involved dishonesty or false statement.[3] This

**3.** Federal Rule of Evidence, 609, distinguishes between those crimes that involve dishonesty or false statement and crimes punishable by death or imprisonment in excess of one year. As to crimes falling within the former category, a per se rule of admissibility applies. The latter category of offenses are subjected to a balancing test to determine their admissibility.

We note that the qualifying language of the note to Rule 609 excludes robbery as a crime "involving dishonesty or false statement .  .  .." The effect of this determination, under the scheme of Rule 609, would make the admission of a prior robbery conviction dependent upon the balancing test. A determination under *Bighum* that an offense does not "involve dishonesty or false statement" requires its absolute exclusion as a basis for impeachment.

Since the determination of whether the prior offense "involves dishonesty or false statement" is for a different purpose it is therefore understandable that the tests employed to make this determination would not be the same. In Pennsylvania, we have traditionally accepted prior robbery convictions for impeachment purposes. We recognize, however, that this precedent was established at a time when we accepted the view that all felony convictions should be admitted for impeachment purposes. A determination of whether a

was a clear departure from the prior practice that permitted the introduction of a *prior* conviction for *any felony* and embraced a per se rule of admissibility.

■ These changes reflected a realization that the right of the prosecution to confront a defendant-witness does not reach such a priority that the inherent unfairness in this type of impeachment should be ignored. In *Bighum* after rejecting a request that we abrogate the practice of using prior convictions for impeachment of defendant-witnesses we endeavored to strike a balance between the competing interests by charging the trial court to weigh certain enumerated factors. These factors were designed to limit the admission of this type of evidence to situations where its introduction was of essential evidentiary value to the prosecution and not unreasonably unfair to the defense. We here reiterate, and to some extent, refine the factors that should be considered in the balancing equation. It is to be stressed that the list is not to be considered exhaustive or exclusive, but rather illustrative of the type of considerations that should influence the decision. Most importantly we stress that there must be a meaningful exercise of discretion in these cases and that the former per se rule of admissibility has been expressly repudiated. In making the determination as to the admissibility of a prior conviction for impeachment purposes, the trial court should consider: 1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; [4] 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the

crime involved *crimen falsi* was formerly required only where the prior offense was a misdemeanor. While we are aware that larcenies accomplished by stealth or misrepresentation bear more directly upon one's veracity than a taking by force, we do not believe that the nexus is so tenuous that robbery should be excluded altogether for this purpose.

4. Here the age of the prior conviction should be considered. Also the nature of the prior offense must be taken into account (e. g. a larceny accomplished by stealth or misrepresentation bears more directly upon veracity than a taking by force, thus the argument for admission is stronger for the former than the latter).

defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

The trial judge expressed the view that "the underlying assumption is that prior convictions would ordinarily be admissible." Thus the trial judge placed the burden upon the defendant to persuade the court that "the prejudicial effect of impeachment "far outweigh[ed]" the relevance of the prior conviction on the issue of credibility.[5] We are constrained to express our disagreement with this initial premise. We do not assume the admissibility of this impeachment evidence absent a substantial showing of prej-

5. The trial court relied expressly on *Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), which case no longer represents federal law concerning the burden of demonstrating prejudice or the lack of it in relation to the probative effect that evidence of a prior conviction will have on the witness's credibility. The new federal rule developed under Rule 609(a) of the Federal Rules of Evidence, 28 U.S.C. Rule 609(a), places the burden on the prosecution to show the need for the evidence outweighs its inherent potential for prejudice. A line of recent federal decisions have placed the burden on the prosecution in this matter. *See United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977) (the Government has the burden of showing that probative value outweighs prejudice); *United States v. Oakes*, 565 F.2d 170, 172 (1st Cir. 1977) (burden is placed on proponent); *United States v. Smith*, 179 U.S.App.D.C. 162, 174, 551 F.2d 348, 360 (1976) (change in the language of Federal Rule 609(a) was not purely semantic in that the prosecution must now bear the burden of proving that prior conviction evidence should be admitted); *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976) (Rule 609 places the burden of proof on the government; the judge should require a brief recital by the government of the circumstances surrounding the admission of the evidence, and a statement of the date, nature and place of the conviction. The defendant should be permitted to rebut the government's presentation, pointing out to the court the possible prejudicial effect to the defendant if the evidence is admitted).

udice by the defendant. Rather, the burden is upon the prosecution to show that the need for this evidence overcomes its inherent potential for prejudice. *See Commonwealth v. Bobko*, 453 Pa. 475, 480, 309 A.2d 576, 578–79 (1973). An accused is entitled to a trial before an objective, dispassionate and impartial trier of fact. *See Commonwealth v. Bruno*, 466 Pa. 245, 262, 352 A.2d 40, 49 (1976); *Commonwealth v. Stewart*, 449 Pa. 50, 52, 295 A.2d 303, 304 (1972), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974). Where evidence is of a highly inflammatory potential, courts have traditionally recognized their responsibility to monitor its use. *See Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978); *Commonwealth v. Ross*, 452 Pa. 500, 506, 307 A.2d 898, 901 (1973). When we consider the difficulty in limiting this type of evidence to the purpose for which it was introduced, the natural tendency for it to be interpreted as indicative of the defendant's propensity to commit crime, and the ineffectiveness of cautionary instructions, it is apparent that the prosecution should be required to show that the state's interest in its probative value outweighs the prejudice that will inure to the defendant.

## A

In the instant case it is clear that the trial court employed an erroneous standard in exercising its discretion in ruling that the impeachment testimony would be permitted if the appellant elected to testify. Appellant avers that this ruling caused the defense at trial to decide that appellant should not testify. Moreover, the need to hear appellant's version was compelling since the prosecution relied solely on his unexplained presence in the burglarized premises. In *Bighum, supra*, we stressed that, of "critical importance," is "the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." *Id.*, 452 Pa. at 567, 307 A.2d at 263. The argument against the admission of the prior conviction is further bolstered by the availability of prior inconsistent statements of appellant,

which should have provided an adequate alternative to the prosecution. It is difficult to understand how appellant's oral admissions, which presumably would have contradicted his trial testimony, could be any less effective, for impeachment purposes, than a five-year-old unrelated robbery conviction. It seems indisputable that prior inconsistent statements relating to the alleged criminal behavior for which the accused is presently on trial must necessarily provide more insight as to his truthfulness in the matter than the fact that at some earlier point in time he was convicted of committing an unrelated criminal act. Finally, it is difficult to support a finding that this rebuttal evidence was essential to the success of the prosecution in a case where the defendant was apprehended virtually "red-handed."

In view of all of these considerations it is apparent that viewed in light of the proper standard, it was an abuse of discretion to rule that this prior conviction was available to the prosecution for impeachment of the appellant in the event he had taken the stand as a witness in his own behalf. We further conclude in light of the critical nature of the ruling that the error can only be remedied by the award of a new trial.

Judgment of sentence reversed and a new trial is awarded.

MANDERINO, J., filed a concurring opinion.

LARSEN, J., filed a dissenting opinion.

MANDERINO, Justice, concurring.

I join in the reversal of appellant's conviction and the granting of a new trial and also join in the opinion of Mr. Justice Nix. It is time, however, to abolish the rule which permits any prior conviction to be introduced unless it establishes motive or common design.

LARSEN, Justice, dissenting.

I dissent. There is an inherent dishonesty involved in *all* felonies; hence, the burden should be on the defendant to

show that the admission into evidence of the defendant's prior conviction would be so prejudicial that a fair trial could not be obtained. The principle of *Bighum* should not be expanded. The judgment of sentence should be affirmed.