504 A.2d 193

**COMMONWEALTH of Pennsylvania**

**v.**

**Randy TANGLE, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1985.

Filed Jan. 3, 1986.

Reargument Denied Feb. 14, 1986.

Terrence P. Cavanaugh, Erie, for appellant.

Ernest J. DiSantis, Jr., Assistant District Attorney, Erie, for Com., appellee.

Before DEL SOLE, HESTER and FEENEY, JJ.*

PER CURIAM:

 This is a direct appeal from a conviction for burglary and criminal attempt for which appellant received a sentence of four to eight years. We hold that the trial court erred in allowing the Commonwealth to introduce rebuttal evidence of appellant's prior record for burglary for the purpose of impeachment,[1] and grant a new trial.

The facts may be summarized as follows. Arriving home at 9:30 P.M. on January 29, 1983, Samuel Opatich discovered that the window in the door of the rear entry to his home was broken. Opatich also noticed fresh blood dripping down the inside of the door to the floor. Opatich immediately called the police. Two officers arrived shortly and followed a fresh trail of blood to a restaurant two blocks away.

At approximately 9:20 P.M., Amy Allen, a hostess at the restaurant, had been confronted by appellant, who was holding his arms across his stomach and appeared to be ill. Allen directed him to the men's restroom, then reported his condition to the restaurant manager, Sharon Anderson. Anderson and a busboy went into the men's room. Appellant had left, but the floor was covered with blood. They cleaned the floor and noticed a trail of blood out onto the sidewalk.

Shortly thereafter, appellant sought treatment of two cuts on the back of his left hand at a nearby hospital

---

* Judge John M. Feeney, of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

1. Due to our disposition, we need not address appellant's two claims related to ineffective assistance of trial counsel. Appellant's other two arguments, that the court erred in permitting the testimony of Sharon Anderson because her name was not disclosed to appellant in the Commonwealth's notice of alibi witnesses, and that appellant's sentence was excessive, are totally without merit.

emergency room, where he said he cut his hand on a basement window. Due to the severity of the lacerations, a cardiovascular surgeon was summoned to treat the injury.

Three days later, appellant was arrested pursuant to a warrant. After receiving *Miranda* warnings, he stated to the police that he had cut his hand while washing dishes. Two days later, he repeated to his probation officer that the injury occurred while washing dishes.

At trial, appellant presented an alibi defense. He relied on three relatives, who testified they were with him at home on the evening of the burglary until he cut his hand trying to open a basement window and went to the hospital. In addition, two friends testified in similar fashion. Appellant himself testified that he was home on the evening in question and cut his hand on the basement window.

To impeach appellant's credibility, the Commonwealth presented rebuttal evidence that appellant had pleaded guilty two years earlier to a burglary charge. The jury found appellant guilty on the charge of burglary and criminal attempt, and he was sentenced to four to eight years incarceration.

At issue is whether the court erred in admitting rebuttal evidence of appellant's burglary conviction to impeach his credibility.

The court correctly stated that it must apply the five factors set forth in *Commonwealth v. Roots*, 482 Pa. 33, 39–40, 393 A.2d 364, 367 (1978):

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to

this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

The *Roots* court emphasized that the foregoing list was neither exclusive nor exhaustive, but only illustrative. *Id.* It is clear that the balancing of these and similar factors is not a mechanical process, but requires a careful weighing of the matter and demands particular sensitivity to the natural tendency of a criminal record to suggest to a jury an accused's propensity to commit crime. The court should be aware of its "inherent potential for prejudice." *Id.*, 482 Pa. at 41, 393 A.2d at 368.

We hold that the trial court erred in applying the *Roots* test. Only two of the five factors were addressed. The court noted the recent occurrence of the prior conviction, which was only two years prior to appellant's trial. It was then stated that appellant "called three [*sic* ] witnesses to substantiate his alibi," which, together with appellant's testimony, impeached the key Commonwealth witness. The opinion continued: "It would have placed the Commonwealth in a disadvantaged state if they could not in turn impeach the credibility of [appellant] through the use of his prior record."[2] Slip opinion at 2. Every time a prior record is suppressed when an accused testifies in his own behalf, the Commonwealth's case is damaged. Were this to be the overriding factor, there would be no need for the five-point balancing test of *Roots*.

The other factors were not considered. We note that appellant was twenty-two years of age at the time of trial. The Commonwealth possessed, and used, alternative means of attacking appellant's credibility. Both a police officer and appellant's probation officer testified that he told them on different occasions that he had cut his hand while

---

**2.** The court also stated that this "was not *an attempt to* smear [appellant's] character," slip opinion at 2 (emphasis added), but did not address its tendency to suggest a propensity to commit the crime charged rather than to impeach credibility.

washing dishes, which were prior statements inconsistent with his trial testimony. We note, too, that of appellant's five witnesses, three were members of his immediate family and two were friends, and that none of them observed the "accident" though all five claimed to be at home with appellant. Under the circumstances, appellant had no other means of presenting his version of the injury than to testify in his own defense.

■ Together with the preceding factors, we weigh heavily the fact that appellant's prior record consisted of a conviction of the same offense for which he stood charged in this trial. This circumstance will always strongly suggest to the jury a predisposition to commit the charged offense. It is axiomatic that admission of a prior criminal record for this purpose is impermissible. We believe that admission of appellant's burglary conviction had a greater tendency to suggest a propensity towards burglary than to discredit his truthfulness as a witness.

Having considered all the factors set forth in *Roots, supra,* we hold that appellant's prior criminal record should not have been admitted in evidence, and that appellant is entitled to a new trial.

■ I agree with that portion of the concurring and dissenting opinion which holds that it was error for the trial court not to conduct a *Bighum* hearing in camera prior to the commencement of the trial, as set forth in *Commonwealth v. Hill,* 302 Pa.Super. 377, 448 A.2d 1090 (1982). Appellant was thereby denied a meaningful choice as to whether to testify in his own behalf.

■ I do not agree with that portion of the Concurring and Dissenting Opinion which would impose upon the Commonwealth the exclusive responsibility of requesting a *Bighum* hearing and further, that failure to do so prior to trial acts as a waiver of the Commonwealth's right to use the impeaching material.

Judgment of sentence vacated and case remanded for new trial.

FEENEY, J., files a concurring and dissenting opinion.

FEENEY, Judge, concurring and dissenting:

I agree with the majority that the trial court erred in allowing the Commonwealth to present rebuttal evidence of a prior burglary offense by appellant inasmuch as the lower court considered only two of the five factors to be weighed pursuant to *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973) and *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978). Accordingly, I concur that judgment of sentence must be vacated and this case remanded for a new trial.

However, I must dissent from the implied approval by the majority in its Opinion of the time at which and manner in which the trial court evaluated the *Roots* criteria in this case. The record discloses that after appellant had testified in his own defense and during his cross-examination by the Commonwealth, appellant's defense counsel objected to the prosecutor's line of questioning indicating at sidebar that it was bound to lead to disclosure of appellant's prior record thereby unduly prejudicing the jury against appellant. At that point the Commonwealth indicated for the first time that it intended to present, as it subsequently did, rebuttal testimony regarding appellant's prior record of crimen falsi. The sidebar discussion in response to defense counsel's objection constituted the entire extent of the trial court's inquiry as to the *Roots* factors.

In *Commonwealth v. Hill,* 302 Pa.Super. 377, 448 A.2d 1090 (1982), this Court stated:

When the admissibility of prior convictions is an issue, the court must conduct an *in camera Bighum* hearing prior to the commencement of trial. Once the court has determined the admissibility of prior convictions before trial, a defendant can more intelligently weigh his or her decision

to testify at trial. [footnote omitted.] 302 Pa.Super at 382, 448 A.2d at 1093.

In *Commonwealth v. Jennings*, 335 Pa.Super. 404, 484 A.2d 409 (1984), this Court reiterated the quoted language from *Hill* and held that, because there had been no *in camera Bighum* hearing prior to trial to determine the admissibility of his prior criminal record, the defendant was effectively denied a meaningful choice as to whether or not to testify for himself. In light of these decisions, the trial court in this case clearly erred in entertaining the issue of admissibility of appellant's prior record after appellant had taken the stand and presented his defense.

Moreover, I would hold that the Commonwealth, having failed to request a *Bighum* hearing at such time as not to impinge upon appellant's right to have a meaningful choice as to whether to testify in his own defense or not, waived any right it may have had to use the impeachment material. The obligation of raising the issue of admissibility of a prior record for impeachment purposes and precipitating a *Bighum* hearing properly rests solely with the prosecution for four reasons.

First, the prosecution, by virtue of its access to criminal court documents and law enforcement records, assuredly is aware of any potential impeachment by a prior record whereas defense counsel, despite due inquiry, may not have been advised or may have been incorrectly or inadequately informed by the client of any previous convictions.

Next, as was recognized in *Bighum:*

Although the statutory law of this jurisdiction expressly prohibits a defendant in a criminal case from being cross-examined as to other crimes he may have committed with two exceptions, our decisional law has made it clear that the Commonwealth may introduce in rebuttal evidence of prior convictions to attack the credibility of a defendant who has elected to testify in his own behalf. [footnote omitted.] *Id.,* 452 Pa. at 562–63, 307 A.2d at 260.

The Commonwealth, consequently, must necessarily be the moving party in seeking to utilize the impeachment material.

Third, placing the obligation on the Commonwealth to initiate a *Bighum* proceeding is wholly consistent with the prosecution's burden to show that the need for the evidence overcomes its inherent potential for prejudice. *Com. v. Roots, supra.*

Finally, the Commonwealth, knowing the existence, nature and extent of a defendant's prior record, is certain, unlike the defendant, to possess all of the information that must be considered by the court in ruling on the issue of admissibility of a prior record for impeachment purposes pursuant to *Roots*, i.e.:

> (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecution's case and the prosecution's need to resort to the evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant's credibility. [footnote omitted.] 482 Pa. at 39–40, 393 A.2d at 367.

In view of the information available to the Commonwealth, and the prosecutor's burden of establishing that the probative value of a defendant's prior record outweighs the prejudice that will inure to the defendant and the requirement that an *in camera Bighum* hearing be held prior to trial, the only meaningful result in any case where the Commonwealth fails to request a timely *Bighum* hearing is that the prosecution has waived its right to use impeach-

ment evidence of the defendant's prior record. Without question, the Commonwealth abandoned any right it may have had to use such testimony in this case by raising the question of its admissibility only *after* appellant had elected to testify in his own defense.

Accordingly, I would hold that the trial court erred in considering the admissibility of, much less admitting, evidence of appellant's record and would vacate judgment of sentence and remand the case for a new trial.